SYLLABUS

This syllabus is not part of the Court's opinion. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Court. In the interest of brevity, portions of an opinion may not have been summarized.

**Antonio Chaparro Nieves v. Office of the Public Defender (A-69-18) (082262)**

**Argued January 6, 2020 -- Decided April 15, 2020**

**LaVECCHIA, J., writing for the Court.**

The Court considers whether the Tort Claims Act (TCA), which governs tort actions filed against public entities and employees, applies to a criminal defendant's legal malpractice claim filed against his public defender. The Court also considers whether, if the TCA applies, a claim for loss of liberty damages is subject to its "verbal threshold" for pain and suffering awards, as set forth in N.J.S.A. 59:9-2(d).

This case arises out of the representation of plaintiff Antonio Chaparro Nieves by a state public defender, Peter Adolf, Esq. After his conviction, Nieves was granted post-conviction relief based on the ineffective assistance of counsel at trial. DNA evidence later confirmed that Nieves was not the perpetrator, and the underlying indictment against him was dismissed. Nieves subsequently recovered damages from the State for the time he spent wrongfully imprisoned. He then filed the present legal malpractice action seeking damages against the Office of the Public Defender (OPD) and Adolf.

Defendants moved for summary judgment, arguing that the TCA barred the damages sought because Nieves failed to vault N.J.S.A. 59:9-2(d)'s verbal threshold. The motion court concluded that the TCA and its verbal threshold were inapplicable. The Appellate Division reversed, concluding that "public defenders are public employees that come within the TCA's immunities and defenses" and that Nieves's claim fell squarely within the TCA. The Appellate Division also held that plaintiff's claim for loss of liberty damages fell within the TCA's limitation on recovery for pain and suffering in N.J.S.A. 59:9-2(d), which Nieves failed to satisfy.

The Court granted certification "limited to the issues of whether legal malpractice claims are exempt from the [TCA] and whether plaintiff's 'loss of liberty' damages claim is subject to the verbal threshold of the TCA." 237 N.J. 428 (2019).

**HELD:** The TCA applied to Nieves's legal malpractice action, and his claim for loss of liberty damages failed to vault the verbal threshold for a pain and suffering damages claim under the strictures of N.J.S.A. 59:9-2(d). Defendants were entitled to summary judgment.

1.  The Court reviews key provisions of the TCA, which has the overarching approach of rendering public employees liable for an act or omission to the extent that a private person would be liable for same, unless an immunity attaches.  It is well recognized that, through the TCA, the Legislature established that generally, immunity for public entities is the rule and liability is the exception.  "Public entity" is a defined term in the TCA.  It "includes the State, and any county, municipality, district, public authority, public agency, and any other political subdivision or public body in the State."  N.J.S.A. 59:1-3.  The term "public employee" is also defined.  It "means an employee of a public entity."  Ibid.  And "'[e]mployee' includes an officer, employee, or servant, whether or not compensated or part-time, who is authorized to perform any act or service."  Ibid.  The TCA governs its coverage through its defined terms.  (pp. 8-10)

2.  The OPD is an office within the executive branch of State government; its head is appointed by the Governor with the advice and consent of the State Senate.  Further, the OPD relies on annual State funding appropriated through the State Budget.  Consideration of those facts leaves no room to doubt that the OPD meets the TCA's definition of a public entity.  Nor is there room to doubt that the Public Defender's exercise of control over his individual public defenders makes those employees the type of person intended by the TCA to be considered public employees for the Act's purposes.  Whether as a full-time staff attorney or a contracted pool attorney serving as a public defender, the individuals serving in such capacity and under the control of the Public Defender meet the definition of an employee of the OPD for TCA purposes and have been treated as public employees in previous cases.  See Rogers v. Cape May Cty. Office of the Pub. Def., 208 N.J. 414, 417 (2011).  (pp. 10-12)

3.  Although the professional representational duty owed by a public defender is to his or her individual client, N.J.S.A. 2A:158A-11, public defenders are performing a public function -- that of ensuring representation for indigent defendants in criminal matters brought by the State, see N.J.S.A. 2A:158A-3, -5.  The fact that such attorneys are adversaries of other state actors prosecuting the criminal charges does not mean they lose their state public employee status under the TCA.  The Act contains no express exemption for public defenders, or for public entities and public employees who fall within the definitions of those terms but are excluded because of the nature of their work.  The OPD is a public entity under the TCA and Adolf is an employee of that public entity.  Therefore, the TCA with its immunities, defenses, and limitation on tort claims filed against public entities and their public employees applies to defendants.  (pp. 12-16)

4.  Where liability is permitted, the TCA limits certain damages available to a plaintiff who brings a claim for injury.  Among its limitations, N.J.S.A. 59:9-2(d) addresses awards for pain and suffering.  Known as the "verbal threshold," subsection (d) provides in part that "[n]o damages shall be awarded against a public entity or public employee for pain and suffering resulting from any injury; provided, however, that this limitation on the recovery of damages for pain and suffering shall not apply in cases of permanent loss

2

of a bodily function, permanent disfigurement or dismemberment where the medical treatment expenses are in excess of $3,600.00." The verbal threshold by its terms applies to pain and suffering claims and not to economic damages. (pp. 16-18)

5.  Nieves is not seeking economic damages in this matter. He claims that quality of life damages were recognized to be recoverable in Ayers v. Township of Jackson, 106 N.J. 557 (1987), and should be recoverable here. To the extent Nieves relies on Ayers, that reliance is misplaced. Ayers involved at bottom a nuisance claim, and its damages explanation must be understood in its narrow context. In legal malpractice actions, the Court recognizes there to be two general categories of damages -- economic damages or an emotional distress award, and Nieves's loss of liberty damages fall within the subset of emotional distress damages. The Court has not spoken on the issue of emotional distress damages in a legal malpractice action but finds it is sensible to recognize that a legal malpractice claim can, in certain circumstances, result in an award of emotional distress damages. In the present matter, however, there is an unavoidable hurdle to any such award: emotional distress damages are controlled under the TCA through its limitations on the recovery of a pain and suffering award. New Jersey case law holds that emotional distress is considered pain and suffering under the TCA. There is no other category of damages into which plaintiff's claim -- denominated as loss of liberty damages or quality of life damages -- fits in this legal malpractice claim premised on attorney negligence. It is either economic damages or a pain and suffering award. Since Nieves already obtained economic damages, his remaining claim must be analyzed under the TCA's constraints on a pain and suffering award. As the Appellate Division correctly held, Nieves failed to satisfy the standards for vaulting the verbal threshold for a pain and suffering damages claim under the strictures of N.J.S.A. 59:9-2(d). (pp. 18-23)

**The judgment of the Appellate Division is AFFIRMED.**

**JUSTICE ALBIN, dissenting in part,** agrees that the TCA applies here and would also hold that non-pecuniary damages -- such as pain and suffering, loss of liberty, and loss of enjoyment of life -- should not be awarded in legal malpractice cases at least in the absence of egregious or extraordinary circumstances. Justice Albin disagrees, however, that the TCA's limitation on awards for "pain and suffering" in N.J.S.A. 59:9-2(d) also limits awards for loss of liberty, which is a distinct species of damages not mentioned in the statute. In Justice Albin's view, neither the text of N.J.S.A. 59:9-2(d) nor the Court's jurisprudence equates pain and suffering damages with loss of liberty damages, and the majority's interpretation of N.J.S.A. 59:9-2(d) will have unintended negative consequences in cases unrelated to legal malpractice.

**CHIEF JUSTICE RABNER and JUSTICES PATTERSON, FERNANDEZ-VINA, SOLOMON, and TIMPONE join in JUSTICE LaVECCHIA's opinion. JUSTICE ALBIN filed a separate opinion, dissenting in part.**

3

SUPREME COURT OF NEW JERSEY

A-69 September Term 2018

082262

Antonio Chaparro Nieves,
a/k/a Anthony Chaparro,

Plaintiff-Appellant,

v.

Office of the Public Defender
and Peter S. Adolf, Esq.,

Defendants-Respondents.

On certification to the Superior Court,
Appellate Division.

| Argued | Decided |
|--------|---------|
| January 6, 2020 | April 15, 2020 |

Thomas D. Flinn argued the cause for appellant
(Garrity, Graham, Murphy, Garofalo & Flinn,
attorneys; Thomas D. Flinn, of counsel and on the
briefs, and Francis X. Garrity, on the briefs).

Daniel M. Vannella, Assistant Attorney General,
argued the cause for respondents (Gurbir S. Grewal,
Attorney General, attorney; Melissa H. Raksa,
Assistant Attorney General, of counsel, and Daniel M.
Vannella, on the briefs).

George Conk argued the cause for amicus curiae New
Jersey State Bar Association (New Jersey State Bar
Association, attorneys; Evelyn Padin, President, of
counsel, and George Conk, on the brief).

This case arises out of the representation of plaintiff Antonio Chaparro Nieves by a state public defender, Peter Adolf, Esq., for criminal charges related to sexual assault. After his conviction, Nieves was granted post-conviction relief based on the ineffective assistance of counsel at trial. DNA evidence later confirmed that Nieves was not the perpetrator, and the underlying indictment against him was dismissed. Nieves subsequently recovered $608,333.33 in damages from the State under N.J.S.A. 52:4C-2, a section of the Mistaken Imprisonment Act, N.J.S.A. 52:4C-1 to -7, for the time he spent wrongfully imprisoned. He then filed the present legal malpractice action seeking damages against the Office of the Public Defender and Adolf.

In this appeal Nieves argues that the Tort Claims Act (TCA or the Act), N.J.S.A. 59:1-1 to 12-3, which governs tort actions filed against public entities and public employees in this state, should not apply to a criminal defendant's legal malpractice claim filed against his public defender. If the Act applies, Nieves then contends that the Act's limitations concerning pain and suffering awards should not apply to the loss of liberty damages he seeks in this malpractice action.

2

The appellate judgment under review held that the TCA applied to Nieves's legal malpractice action and that his claim for loss of liberty damages had to satisfy the Act's requirements for a pain and suffering award. We affirm the Appellate Division's judgment on both issues.

I.

In 2015, Nieves served the State with a notice of tort claim, pursuant to the TCA, and filed the instant complaint against Adolf and the Office of the Public Defender (OPD) (collectively, defendants) asserting legal malpractice in the defense of the criminal charges that had been filed against him. Nieves alleged that defendants' deficient representation was the proximate cause of his wrongful conviction and twelve-year incarceration. He also claimed that Adolf violated Rule of Professional Conduct (RPC) 1.7.

At the close of discovery, defendants sought dismissal of the complaint by filing a motion for summary judgment. Defendants argued that a violation of the RPCs does not give rise to a cause of action in tort and that the TCA barred the damages sought because Nieves failed to vault the Act's requirements for a pain and suffering award, as set forth in N.J.S.A. 59:9-2(d) (the "verbal threshold" requirements for a pain and suffering award). Nieves sought only noneconomic damages, and defendants argued that his subjective emotional injuries could not be recovered because he had not demonstrated

3

permanent psychological injury accompanied by physical symptoms and had failed to produce evidence of $3600 in medical expenses.

The motion court agreed that a violation of the RPCs does not provide a basis for a cause of action in tort and dismissed that count. However, with respect to the remainder of Nieves's complaint, the court concluded that the TCA and its verbal threshold were inapplicable to Nieves's claims. Accordingly, the court brushed aside defendants' arguments, rooted in the Act's requirements, that they were entitled to dismissal where Nieves made no claim for economic damages, did not provide an expert report from a psychologist or psychiatrist, and did not certify that he had any medical expenses.

In its denial of a subsequent motion for reconsideration filed by defendants, the court further explained that,

> whether an individual is represented by private counsel or counsel appointed from a publicly funded institution, he is entitled to the same level of competency. And, if that level of competency falls below the standard, then he should also be entitled to the same level of recovery, whether he is represented by private counsel or counsel appointed from a publicly funded institution.

Defendants sought interlocutory appellate review. The Appellate Division reversed and ordered the entry of summary judgment in favor of defendants.

4

The Appellate Division reviewed the Act's definitions, which address its scope, as well as pertinent case law, and concluded that "the OPD is a public entity and public defenders are public employees that come within the TCA's immunities and defenses." The Appellate Division relied on Rogers v. Cape May County Office of the Public Defender, in which this Court, in focusing on a question of compliance with a TCA procedural requirement, stated that "[c]laims for damages against defendants -- a public entity and a public employee -- are subject to the provisions of the Tort Claims Act." (quoting 208 N.J. 414, 420 (2011)). Finding that precedent applicable to Nieves's claim of legal malpractice against defendants, the appellate court concluded that the claim fell squarely within the Act -- and that Nieves had failed to meet the Act's requirements.

Further, the Appellate Division held that plaintiff's claim for loss of liberty damages based on his wrongful imprisonment fell within the TCA's limitation on recovery for pain and suffering in N.J.S.A. 59:9-2(d). The court relied on DelaCruz v. Borough of Hillsdale, 183 N.J. 149, 164-65 (2005), in which the Court applied the TCA to a claim for false imprisonment filed against arresting police officers and required that claim to "vault the verbal threshold in order to be cognizable." Concluding that Nieves failed both to satisfy N.J.S.A. 59:9-2(d)'s requirements to demonstrate medical expenses of

5

at least $3600 and to establish through objective evidence that he had suffered a permanent injury and a permanent loss of a bodily function that is substantial, the Appellate Division reversed the denial of summary judgment.

We granted Nieves's petition for certification "limited to the issues of whether legal malpractice claims are exempt from the [TCA] and whether plaintiff's 'loss of liberty' damages claim is subject to the verbal threshold of the TCA." 237 N.J. 428 (2019). We also granted amicus curiae status to the New Jersey State Bar Association.

## II.

The parties advance essentially the same arguments put forward before the Appellate Division.

Nieves acknowledges that the OPD may be a public agency and public defenders may be public employees in many settings, but he argues that when they are engaged in the representation of a criminal defendant, public defenders are not engaged in government action. Therefore, he claims the TCA does not apply. Even if the TCA did apply, Nieves contends that the verbal threshold is inapplicable because the "quality of life" damages he seeks have been, according to him, recognized to be qualitatively different from subjective damages for pain and suffering. (citing Ayers v. Township of Jackson, 106 N.J. 557 (1987)).

6

Defendants, on the other hand, in claiming the protections of the TCA apply, assert that the TCA protects a broad swath of public entities and public employees, and includes "any employee of a public entity, including the State and its many departments, offices, and other agencies."  Defendants argue that the definitions setting forth the TCA's scope encompass the OPD and its employees.  Further, defendants argue that plaintiff's claim for "loss of liberty" damages amounts to the same as a claim for emotional distress damages and is thus subject to N.J.S.A. 59:9-2(d) and its threshold, which Nieves has not vaulted.  According to defendants, of the two types of damages recognized in a legal malpractice action -- economic loss and, under certain circumstances, emotional distress -- Nieves already recovered economic damages and is not seeking them in this matter, and he is ineligible under the verbal threshold for pain and suffering damages.

The New Jersey State Bar Association fully supports defendants' position that the TCA applies to claims of legal malpractice filed against public defenders in connection with representation of indigent individuals in criminal proceedings.

7

The background to and development of the TCA have been addressed many times before. See, e.g., Velez v. City of Jersey City, 180 N.J. 284, 289-91 (2004). "The overall purpose of the [TCA] was to reestablish the immunity of public entities while coherently ameliorating the harsh results of the doctrine [of sovereign immunity]." Beauchamp v. Amedio, 164 N.J. 111, 115 (2000).

N.J.S.A. 59:1-2 and 2-1 set forth the essential immunity of public entities. N.J.S.A. 59:1-2 declares that "public entities shall only be liable for their negligence within the limitations of this act and in accordance with the fair and uniform principles established herein." N.J.S.A. 59:2-1(a) states that, "[e]xcept as otherwise provided by this act, a public entity is not liable for an injury, whether such injury arises out of an act or omission of the public entity or a public employee or any other person." Subsection (b), in turn, subjects liability to any immunities the Act provides for public entities, as well as any defenses that would be available if the public entity defendant were a private person. N.J.S.A. 59:2-2(a) then sets forth the primary source of public entity liability: an "injury proximately caused by an act or omission of a public employee within the scope of his employment." See Margolis & Novack,

8

Current N.J. Statutes Title 59, Claims Against Public Entities, cmt. 1 & cmt. of 1972 Task Force on N.J.S.A. 59:2-2 (2020). If the public employee is not liable for an act or omission, the public entity is not liable. N.J.S.A. 59:2-2(b).

The Act details the liability of public employees. While liability is limited in various areas, see, e.g., N.J.S.A. 59:3-1(c) ("A public employee is not liable for injury where a public entity is immune from liability for that injury."); N.J.S.A. 59:3-2(a) ("A public employee is not liable for an injury resulting from the exercise of judgment or discretion vested in him [or her]."), the overarching approach of the TCA renders public employees liable for an act or omission to the extent that a private person would be liable for same, unless an immunity attaches, N.J.S.A. 59:3-1(a).

It is well recognized that, through the TCA, the Legislature established that "[g]enerally, immunity for public entities is the rule and liability is the exception." Fluehr v. City of Cape May, 159 N.J. 532, 539 (1999). The Act delineates both procedural and substantive requirements for bringing a tort claim against the State, public entities, and public employees.

"Public entity" is a defined term in the TCA. It "includes the State, and any county, municipality, district, public authority, public agency, and any other political subdivision or public body in the State." N.J.S.A. 59:1-3. The term "public employee" is also defined. It "means an employee of a public

9

entity." Ibid. Under the Act, "'[e]mployee' includes an officer, employee, or servant, whether or not compensated or part-time, who is authorized to perform any act or service; provided, however, that the term does not include an independent contractor." Ibid.

The Act governs its coverage through its defined terms. We thus turn to the application of those definitions to defendants in this matter.

B.

The OPD is an office within the executive branch of State government. N.J.S.A. 2A:158A-3. The head of the OPD is appointed by the Governor with the advice and consent of the State Senate. N.J.S.A. 2A:158A-4. Further, the OPD relies on annual State funding appropriated through the State Budget. See, e.g., Dep't of Treasury, Office of Mgmt. & Budget, Appropriations Handbook (F.Y. 2019-2020) ("Appropriations Handbook") B-203, B-204, https://www.state.nj.us/treasury/omb/publications/20approp/FullAppropAct.pdf. Consideration of those facts leaves no room to doubt that the OPD meets the TCA's definition of a public entity.

Further, we perceive no room to doubt that the Public Defender's exercise of control over his individual public defenders makes those employees the type of person intended by the TCA to be considered public employees for the Act's purposes. The Public Defender is statutorily required

to exercise ongoing quality control over the competent professional services the office is expected to provide to indigent defendants. N.J.S.A. 2A:158A-8 (cases to be assigned to attorneys "in the light of the nature, complexity and other characteristics of the cases, the services to be performed, the status of the matters, and other relevant factors"). The Public Defender is responsible for ensuring proper staffing, including by contracting with outside pool attorneys. N.J.S.A. 2A:158A-9; see also id. at -7(c) to (d). All serve at the pleasure of the Public Defender. N.J.S.A. 2A:158A-6. Whether as a full-time staff attorney or a contracted pool attorney serving as a public defender, the individuals serving in such capacity and under the control of the Public Defender meet the definition of an employee of the OPD for TCA purposes. Moreover, we note that the Legislature includes in its annual budget funds for indemnification "for the defense of indigents." Appropriations Handbook B-210; accord N.J.S.A. 59:12-1.

We have heretofore treated a state public defender as a public employee in connection with a tort claim filed under the TCA. In Rogers, although we were not faced with a question about the applicability of the TCA to a legal malpractice claim for damages filed against the OPD and a public defender, we held the plaintiff's claims against the OPD and the public defender in that matter were "not barred by the one-year filing limitation in [the TCA]." 208

11

N.J. at 417. The appeal involved a question about the date from which the Act's timeframes for notice and filing of a claim should be calculated; in that context, we obviously regarded the OPD and its public defender employees as falling under the procedural requirements for suit contained in the TCA. See ibid.

Nevertheless, Nieves maintains that the issue has not been resolved by this Court. We turn next to his arguments for retreating from the position taken in Rogers, which clearly considered the OPD and public defenders to be, respectively, a public entity and public employees for purposes of the TCA.

C.

Nieves argues the OPD and public defenders are not subject to the TCA because when they represent the interests of criminal defendants, as in this case, they are not "engaged in government action." We cannot agree with that proposition.

The OPD is performing a state function when providing representation for indigent defendants. See N.J.S.A. 2A:158A-3, -5 (establishing the Office of the Public Defender in order to comply with the New Jersey Constitution and making it "the duty of the Public Defender to provide for the legal representation of any indigent defendant who is formally charged with the commission of an indictable offense"). Although the professional

representational duty owed by a public defender is to his or her individual client, N.J.S.A. 2A:158A-11, public defenders are performing a public function -- that of ensuring representation for indigent defendants in criminal matters brought by the State. And the fact that such attorneys are adversaries of other state actors prosecuting the criminal charges does not mean that they lose their state public employee status under the TCA.[1]

The Act contains no express exemption for public defenders, or for public entities and public employees who otherwise fall within the definitions of those terms but are excluded because of the nature of their work. See N.J.S.A. 59:1-3. The plainly worded definitions control the inquiry here. The legislative definitions are straightforward, making their intent clear and unambiguous. See State v. Sutherland, 231 N.J. 429, 443-44 (2018) ("When interpreting a statute we look first, and foremost, to its actual language and ascribe to its words their ordinary meaning."). We enforce plainly worded

---

[1] There are other instances when a state agency represents a private party's interests in an adversarial proceeding in which the opposing party may also be represented by another state attorney. For example, the Division on Civil Rights may prosecute a Law Against Discrimination claim against a public entity and public employee. Although representation in such cases is provided to private parties and professional duties flow to the individual represented, the representation itself is required by law and is in the public interest, and attorneys are not -- and should not be -- stripped of "public employee" status under the TCA when performing that statutory representational role.

13

statutes according to their terms.  <u>DiProspero v. Penn</u>, 183 N.J. 477, 492 (2005).

The OPD is a public entity under the TCA and Adolf is an employee of that public entity.  Therefore, the TCA with its immunities, defenses, and limitation on tort claims filed against public entities and their public employees applies to defendants.[2]

The fact that this is a legal malpractice action does not alter that conclusion.  Nieves relies on a published trial court opinion to argue otherwise.  In <u>Delbridge v. Office of Public Defender</u>, a Law Division judge found an exception to the immunity afforded under the TCA for legal malpractice claims.  238 N.J. Super. 288, 311 (Law Div. 1989).  Identifying no precedent in this state at the time, the <u>Delbridge</u> court relied on United States Supreme Court cases analyzing immunity for public defenders in actions brought under 42 U.S.C. § 1983.  <u>Ibid.</u> (citing <u>Polk County v. Dodson</u>, 454 U.S. 312, 325 (1981); <u>Ferri v. Ackerman</u>, 444 U.S. 193, 205 (1979)).  Those

---

[2]  Although we need not go beyond the plain language of the statute, we note that extrinsic aids support our conclusion.  The California Tort Claims Act, on which our State's TCA was modelled and to which we have turned for insight from time to time, interprets its analogous definitions to the same end with respect to that state's public defenders.  <u>See</u> <u>Briggs v. Lawrence</u>, 281 Cal. Rptr. 578, 586 (Cal. Ct. App. 1991) (holding, in the context of a legal malpractice claim, that public defenders are public employees within the meaning of California's Tort Claims Act).

14

cases, however, were limited to federal public defenders in § 1983 actions and are not controlling in this matter before our Court. Indeed, in the decisions cited by Delbridge, the United States Supreme Court noted their limits. See Polk County, 454 U.S. at 325 ("[W]e intimate no views as to a public defender's liability for malpractice in an appropriate case under state tort law."); Ferri, 444 U.S. at 197-98 ("We are not concerned with the elements of a state cause of action for malpractice . . . . [W]hen state law creates a cause of action, the State is free to define the defenses to that claim, including the defense of immunity, unless, of course, the state rule is in conflict with federal law.").

This is a simple application of the TCA to a tort action brought against a state public entity and its employees. A legal malpractice claim is "grounded in the tort of negligence." McGrogan v. Till, 167 N.J. 414, 425 (2001). Numerous decisions recognize that. See, e.g., Rogers, 208 N.J. at 421; Grunwald v. Bronkesh, 131 N.J. 483, 492 (1993). Tort claims generally -- and that includes legal malpractice claims -- are governed by the TCA when brought against the State, public entities, and public employees.

An attorney certainly owes a duty of care to the individual being represented, but that does not alter the status of the public defender as a public employee, or the OPD's status as the public employer. Both are entitled to the

benefit of the TCA's application, which does not provide absolute immunity but places conditions and limits on the ability to recover damages in such settings.

Having determined that the TCA controls here, we turn to the application question involved.

## IV.

## A.

Pertinent to this appeal, where liability is permitted, the TCA limits certain damages available to a plaintiff who brings a claim for injury.[3] See N.J.S.A. 59:9-2. Among its limitations, N.J.S.A. 59:9-2(d) addresses awards for pain and suffering. Known as the "verbal threshold," subsection (d) provides in part that

> [n]o damages shall be awarded against a public entity or public employee for pain and suffering resulting from any injury; provided, however, that this limitation on the recovery of damages for pain and suffering shall not apply in cases of permanent loss of a bodily function, permanent disfigurement or dismemberment where the medical treatment expenses are in excess of $3,600.00.
>
> [N.J.S.A. 59:9-2(d).]

---

[3] The Act defines "injury" as "death, injury to a person, damage to or loss of property or any other injury that a person may suffer that would be actionable if inflicted by a private person." N.J.S.A. 59:1-3.

16

That provision weeds out claims for "subjectively measured damages for pain and suffering, which are not compensable by the Tort Claims Act," Ayers, 106 N.J. at 571 (quoting Ayers v. Township of Jackson, 202 N.J. Super. 106, 118 (App. Div. 1985)), from claims for objectively measured damages for pain and suffering that can meet the threshold's expense and other requirements. Notably, that limitation does not apply to willful or other outrageous misconduct excepted under N.J.S.A. 59:3-14. See Leang v. Jersey City Bd. of Educ., 198 N.J. 557, 584 (2009); Toto v. Ensuar, 196 N.J. 134, 147-48 (2008).

A two-part test is used to assess whether a plaintiff satisfies the requirements of N.J.S.A. 59:9-2(d). See, e.g., Toto, 196 N.J. at 145; Knowles v. Mantua Twp. Soccer Ass'n, 176 N.J. 324, 329 (2003). To "vault the [verbal] threshold, '[a] plaintiff must show "(1) an objective permanent injury, and (2) a permanent loss of a bodily function that is substantial."'" Toto, 196 N.J. at 145 (second alteration in original) (quoting Knowles, 176 N.J. at 329); see also Brooks v. Odom, 150 N.J. 395, 406 (1997) (interpreting the TCA to require not a total permanent loss of a bodily function, but "a permanent loss of the use of a bodily function that is substantial").

## B.

The second issue on which we granted certification is whether Nieves's loss-of-liberty damages claim is subject to the TCA's verbal threshold.

17

The verbal threshold by its terms applies to pain and suffering claims and not to economic damages.  See DelaCruz, 183 N.J. at 164.  Nieves is not seeking economic damages in this matter.  And, as already noted, Nieves has received an award in excess of $600,000 under the Mistaken Imprisonment Act, an award that is calculated in relation to time served and capped based on a claimant's earnings per year before incarceration.  N.J.S.A. 52:4C-5(a).

We do not discount the injury Nieves has suffered as a result of having spent more than twelve years imprisoned for a crime he did not commit.  The question we must address is only whether Nieves must submit to the requirements for a pain and suffering award in pursuing his noneconomic claim for loss of liberty damages.  He claims that quality of life damages were recognized to be recoverable in our decision in Ayers and should be recoverable here, as loss of liberty damages, unencumbered by the verbal threshold.  We find his reliance on Ayers unsound and his argument in support of a new category of damages in legal malpractice claims otherwise unpersuasive.[4]

---

[4]  To the extent that our dissenting colleague chooses to discuss damages awards for loss of liberty in settings outside of a legal malpractice claim, we have no reason to comment.  We address solely the issue before the Court, which concerns the availability of loss of liberty damages in a legal malpractice claim filed against a state public defender.

C.

To the extent Nieves relies on Ayers, that reliance is misplaced. Ayers involved at bottom a nuisance claim. In Ayers, the defendant's landfill contaminated the plaintiffs' well water with toxic pollutants, causing the plaintiffs to not have access to running water for nearly two years. 106 N.J. at 565, 570. The plaintiffs brought a claim for nuisance under the TCA. Id. at 565. At trial, the jury awarded the plaintiffs damages for, among other things, impairment of their quality of life. Id. at 565-66. This Court held that the plaintiffs' quality of life damages were not subject to the TCA's verbal threshold for pain and suffering damages, explaining that pain and suffering "was not intended to bar claims for the inconvenience associated with the invasion of a property interest." Id. at 571 (emphasis added). Notably, the Court stated that "[a] claim for quality of life damages is derived from the law of nuisance." Ibid. To the extent the Court discussed quality of life impacts in recognizing a unique damage claim in that matter, the damages explanation must be understood in its narrow context. It has not been expanded upon since, and we decline the invitation to incorporate it here.

As for urging that we recognize what is described to be a new "sliver" of damages in this legal malpractice action that would not be subject to the verbal threshold requirements for a pain and suffering award under the TCA, we

19

likewise decline. We recognize there to be two general categories of damages in legal malpractice actions, and Nieves's loss of liberty damages fall within the subset of emotional distress damages where such are recoverable in attorney malpractice claims.

A legal malpractice action has three elements: "(1) the existence of an attorney-client relationship creating a duty of care by the defendant attorney, (2) the breach of that duty by the defendant, and (3) proximate causation of the damages claimed by the plaintiff." McGrogan, 167 N.J. at 425. Generally, damages are awarded on the basis of economic loss. See id. at 424-26.

This Court has not spoken on the issue of emotional distress damages in a legal malpractice action. However, the Appellate Division has commented on the possibility of such an award. In the setting of a legal malpractice case involving an underlying medical malpractice claim, the Appellate Division stated that it was

> persuaded that emotional distress damages should not be awarded in legal malpractice cases at least in the absence of egregious or extraordinary circumstances. Whether viewed within the context of the traditional concept of proximate cause, or simply as a matter of sound public policy, we are convinced that damages should be generally limited to recompensing the injured party for his economic loss.
>
> [Gautam v. De Luca, 215 N.J. Super. 388, 399 (App. Div. 1987) (citations omitted).]

20

See also Innes v. Marzano-Lesnevich, 435 N.J. Super. 198 (App. Div. 2014) (relying on Gautam).  It is fair to say that, presently, emotional distress damages are acknowledged to be potentially recoverable in certain legal malpractice settings.

The Restatement provides helpful insight in this respect.  It recognizes that a lawyer liable for legal malpractice may be subject to economic damages and damages for emotional distress.  Restatement (Third) of the Law Governing Lawyers § 53 (Am. Law Inst. 2000).  In its comment (g) on damages for emotional distress, the Restatement notes the differing rules that apply among the jurisdictions canvassed, with many cases focusing on intentional, outrageous, or reckless behavior or similarly egregious circumstances, and some that have allowed emotional distress damages for malpractice causing a client's imprisonment.  See id. at cmt. g; see also Restatement (Second) of Torts § 905 (Am. Law Inst. 1979) ("Compensatory damages that may be awarded without proof of pecuniary loss include compensation (a) for bodily harm, and (b) for emotional distress."); id. at cmt. g (mentioning "loss of freedom" as an element of emotional distress damages "if the defendant intentionally causes the loss").

It is sensible to recognize that a legal malpractice claim can, in certain circumstances, result in an award of emotional distress damages.  But, in the

21

present matter, there is an unavoidable hurdle to any such award: emotional distress damages are controlled under the TCA through its limitations on the recovery of a pain and suffering award.

Our case law holds that emotional distress is considered pain and suffering under the TCA. See Ayers, 106 N.J. at 577; cf. Collins v. Union Cty. Jail, 150 N.J. 407, 422-23 (1997) (recognizing that a permanent psychological injury, when properly documented, can meet the verbal threshold requirements of the TCA for emotional distress as a pain and suffering award). There is no other category of damages into which plaintiff's claim -- denominated as loss of liberty damages or quality of life damages -- fits in this legal malpractice claim premised on attorney negligence.[5] It is either economic damages or a pain and suffering award. Since Nieves already obtained economic damages, his remaining claim must be analyzed under the TCA's constraints on a pain and suffering award.

As the Appellate Division correctly held, Nieves failed to satisfy the standards for vaulting the verbal threshold for a pain and suffering damages

---

[5] Because it is not alleged, we need not address a TCA analysis where intentional, willful, malicious or other outrageous conduct addressed through N.J.S.A. 59:3-14 is asserted, although we acknowledge that conduct meeting that section's standards has been recognized as exempt from the limitations imposed by N.J.S.A. 59:9-2(d). See, e.g., Leang, 198 N.J. at 584; Toto, 196 N.J. at 145, 147-48.

22

claim under the strictures of N.J.S.A. 59:9-2(d).  Defendants were entitled to summary judgment, and the Appellate Division's judgment appropriately ordered dismissal of the complaint filed in this matter.

V.

The judgment of the Appellate Division is affirmed.

CHIEF JUSTICE RABNER and JUSTICES PATTERSON, FERNANDEZ-VINA, SOLOMON, and TIMPONE join in JUSTICE LaVECCHIA's opinion. JUSTICE ALBIN filed a separate opinion, dissenting in part.

Antonio Chaparro Nieves,
a/k/a Anthony Chaparro,

Plaintiff-Appellant,

v.

Office of the Public Defender
and Peter S. Adolf, Esq.,

Defendants-Respondents.

JUSTICE ALBIN, dissenting in part.

I agree with the majority that the Tort Claims Act (TCA), N.J.S.A. 59:1-1 to 12-3, applies to legal malpractice actions brought against public defenders because they are state employees. I would also hold that non-pecuniary damages -- such as pain and suffering, loss of liberty, and loss of enjoyment of life -- "should not be awarded in legal malpractice cases at least in the absence of egregious or extraordinary circumstances." See Gautam v. De Luca, 215 N.J. Super. 388, 399 (App. Div. 1987).

I disagree with the majority, however, that the TCA's limitation on awards for "pain and suffering" in N.J.S.A. 59:9-2(d) also limits awards for loss of liberty, which is a distinct species of damages not mentioned in the statute. Neither the text of N.J.S.A. 59:9-2(d) nor our jurisprudence equates pain and suffering damages with loss of liberty damages. The majority's

1

overly expansive interpretation of N.J.S.A. 59:9-2(d) will have unintended negative consequences in cases unrelated to legal malpractice. Indeed, today's decision will likely foreclose persons who are wrongly arrested and imprisoned from recovering damages for their loss of liberty caused by state, county, and municipal actors.

I therefore respectfully dissent.

I.

N.J.S.A. 59:9-2(d) -- often referred to as the "verbal threshold" -- sets forth the limitations on an award for pain and suffering damages against a public entity. The statute provides that

> [n]o damages shall be awarded against a public entity or public employee for pain and suffering resulting from any injury; provided, however, that this limitation on the recovery of damages for pain and suffering shall not apply in cases of permanent loss of a bodily function, permanent disfigurement or dismemberment where the medical treatment expenses are in excess of $3,600.00.
>
> [N.J.S.A. 59:9-2(d).]

The first canon of statutory interpretation is to look to the plain language of the statute to discern its meaning. See DiProspero v. Penn, 183 N.J. 477, 492-93 (2005). The statute, by its terms, limits only "the recovery of damages for pain and suffering" unless the verbal threshold is met. It does not limit the recovery of damages for loss of liberty. See DelaCruz v. Borough of Hillsdale,

2

183 N.J. 149, 164 (2005) ("[T]he effect of the verbal threshold is limited to pain and suffering claims; [other] damages are not limited by the [TCA].").

Although damages for pain and suffering and loss of liberty are subsets of non-pecuniary damages, loss of liberty damages are not a subset of pain and suffering damages. Our jurisprudence recognizes that these are different forms of damages.

Pain and suffering is generally defined as "subjective symptoms of depression, stress, health concerns, and anxiety" or "intangible, subjective feelings of discomfort that are associated with personal injuries." Ayers v. Township of Jackson, 106 N.J. 557, 571, 576 (1987); see also Model Jury Charges (Civil), 8.11E, "Disability, Impairment and Loss of the Enjoyment of Life, Pain and Suffering" (rev. May 2017) (defining pain and suffering as "the pain, physical and mental suffering, discomfort, and distress that a person may endure as a natural consequence of the injury"); 2 Stein on Personal Injury Damages § 8:2 (3d ed.) (defining pain and suffering as not only "physical pain," but also "fright, nervousness, grief, anxiety, worry, mortification, shock, humiliation, indignity, embarrassment, apprehension, terror, or ordeal").

Loss of liberty damages are a distinct category of damages from pain and suffering damages, as recognized by other jurisdictions. The United States Court of Appeals for the Second Circuit has held that "[t]he damages

3

recoverable for loss of liberty for the period spent in a wrongful confinement are separable from damages recoverable for such injuries as physical harm, embarrassment, or emotional suffering." Kerman v. City of New York, 374 F.3d 93, 125 (2d Cir. 2004); see also Martinez v. Port Auth. of N.Y. & N.J., 445 F.3d 158, 161 (2d Cir. 2006) (recognizing that "emotional distress and loss of liberty [are] separate components of [a] false arrest claim" and therefore "are 'separable' and thus separately compensable"). The purpose of loss of liberty damages is to "redress the denial of free movement and the violation done to [the plaintiff's] dignity as a result of the unlawful detention, and not the physical and mental injuries arising from the incident." Gardner v. Federated Dep't Stores, Inc., 907 F.2d 1348, 1353 (2d Cir. 1990); see also Phillips v. District of Colombia, 458 A.2d 722, 725 (D.C. 1983) (recognizing loss of liberty damages and holding that "the single fact of imprisonment, the deprivation of one's right to move about, is compensable").

Not all non-pecuniary damages fall within the category of pain and suffering damages. Model Civil Jury Charge 8.11E distinguishes between damages for disability impairment, loss of enjoyment of life, and pain and suffering. Loss of enjoyment of life is defined as "the inability to pursue one's normal pleasure and enjoyment." Model Jury Charges (Civil), 8.11E (citing Eyoma v. Falco, 247 N.J. Super. 435, 452 (App. Div. 1991)). "[T]he actual

4

loss of enjoyment of life is not a function of pain and suffering." Eyoma, 247 N.J. Super. at 452. Additionally, "[d]isability and impairment is clearly distinct and separate from pain and suffering." Ibid.

Indeed, in Ayers, this Court distinguished between quality of life damages and pain and suffering damages in an action brought by municipal residents against Jackson Township for ground and water contamination. 106 N.J. at 565, 569-72. Acknowledging that quality of life damages derive from the law of nuisance, the Court concluded that "quality of life damages represent compensation for losses associated with damage to property, and . . . do not constitute pain and suffering under the Tort Claims Act." Id. at 571-72.

Additionally, loss of liberty does not fall within the category of emotional distress. The elements of emotional distress damages, in many ways, are indistinguishable from pain and suffering damages. Ayers, 106 N.J. at 576; see also Tarr v. Ciasulli, 181 N.J. 70, 77-78 (2004) (listing cases in which emotional distress damages were recoverable for various types of injuries). Loss of liberty, moreover, is an objective fact. A determination that a person has been deprived of liberty does not require an inquiry into subjective feelings of emotional distress or mental anguish.

There is no basis in the TCA or our jurisprudence for the majority's conclusion that "loss of liberty damages fall within the subset of emotional

5

distress" in legal malpractice actions, see ante at ___ (slip op. at 19), or, for that matter, in any other legal action. Had the Legislature intended to sweep into the verbal threshold more than just pain and suffering damages, the statute would have limited the recovery of not just pain and suffering but also loss of liberty damages, or would have limited recovery of all non-pecuniary damages. See N.J.S.A. 59:9-2(d). We must presume that the Legislature is conversant with our jurisprudence, that it chose the statute's language with precision, and that it intended what it said. DiProspero, 183 N.J. at 492-94. Limiting the verbal threshold to pain and suffering was a policy choice made by the Legislature. This Court should not extend the metes and bounds of the verbal threshold beyond the Legislature's clearly expressed intention.

The majority's conflation of loss of liberty damages with pain and suffering and emotional distress damages undoubtedly will become a source of confusion in future cases. By blurring the lines between loss of liberty and pain and suffering/emotional distress damages, the majority decision raises certain questions. Will an individual who is wrongly arrested and confined not be entitled to damages for the loss of his liberty solely because he did not suffer "permanent loss of a bodily function, permanent disfigurement or dismemberment" under N.J.S.A. 59:9-2(d)'s verbal threshold? Does the

6

wrongful loss of one's liberty -- beyond economic damages, such as lost wages -- have no value under the TCA?

Words and phrases make a difference. They do not have endless elasticity. Defining loss of liberty damages as the same as pain and suffering and emotional distress damages is a breaking point. I therefore respectfully dissent.

## II.

To be clear, I believe that plaintiffs must vault a high threshold to be entitled to non-pecuniary damages in a legal malpractice action, whether against a public defender or a private attorney. At least in the absence of "egregious or extraordinary circumstances," damages for pain and suffering, loss of liberty, and loss of enjoyment of life should not be permissible. See Gautam, 215 N.J. Super. at 399; Ovando v. County of Los Angeles, 71 Cal. Rptr. 3d 415, 439-40 (Ct. App. 2008) (holding that "[a]n emotional injury resulting from the incarceration of an innocent defendant is plainly foreseeable" and therefore "a defense attorney in a criminal case owes a duty to his or her client to avoid such an injury"). But cf. Dombrowski v. Bulson, 971 N.E.2d 338, 340-41 (N.Y. 2012) (declining to depart from New York's rule "limiting recovery in legal malpractice actions to pecuniary damages"

7

because to allow non-pecuniary damages "would have, at best, negative and, at worst, devastating consequences for the criminal justice system").

Because the present record before this Court does not indicate whether the alleged legal malpractice here was "egregious or extraordinary," I would remand to the trial court for consideration of this issue.